**SULZER BINGHAM PUMPS, INC.,
a Delaware Corporation,
Plaintiff–Appellee,**

**v.**

**LOCKHEED MISSILES & SPACE COMPANY, INC., a California Corporation,
Defendant–Appellant.**

**No. 91–35315.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1991.

Decided Oct. 25, 1991.

---

Frank Seiglitz, Pillsbury, Madison & Sutro, San Jose, Cal., for defendant-appellant.

James N. Westwood, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for plaintiff-appellee.

Before KILKENNY, GOODWIN and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This appeal arises out of an unusual dispute between a major government contractor and a subcontractor providing components for the United States Navy's Trident II nuclear submarines. The contractor, Lockheed Missiles & Space Company, awarded a subcontract to the low bidder for the subcontract, the appellee Sulzer Bingham Pumps, Inc. Sulzer Bingham's bid, however, was in fact millions of dollars lower than it would have been if Sulzer Bingham had not committed a series of errors in preparing the bid. According to the findings of the respected district judge who heard the evidence, Lockheed doubted that Sulzer Bingham could perform the contract at that price, but nevertheless awarded the contract for the bid price, resulting in an unconscionably low price. The district court concluded that Lockheed's conduct amounted to overreaching in violation of basic contractual principles, and that its failure to ask the subcontractor to verify its bid violated the terms of the subcontract. The district court declined to rescind the contract. The district court did, however, award Sulzer Bingham some equitable relief in the form of the actual costs it incurred above the contract price, in a total amount which was not to exceed the next lowest bid. Lockheed appeals.

In its appeal, Lockheed raises two principal contentions. The first is that the terms of its contract did not incorporate the Federal Acquisition Regulations, and therefore did not require Lockheed to call the underbid to Sulzer Bingham's attention and ask for verification of the suspect bid. The second is that government contract law does not permit a court ever to adjust the contract price where the underbid is the product of judgment errors as opposed to arithmetic miscalculations. We affirm the district court because we agree with the district court that Lockheed did breach the terms of its contract by failing to ask Sulzer Bingham to verify the bid, and that Lockheed therefore must bear substantial responsibility for the unconscionably low price. We further agree with the district court that in these circumstances, the court

was not foreclosed from fashioning equitable relief.

## FACTUAL BACKGROUND

The facts as determined by the district court are not seriously disputed on appeal. They can be summarized as follows.

Lockheed is the prime contractor for the Navy's Trident II nuclear submarines. The subcontract at issue involved the production of ballast cans. When the submarines are not carrying nuclear missiles, they need ballast cans for stability. Each ballast can weighs 64,000 pounds and stands 15 feet high.

In 1988, Lockheed sent out a request for quotation to potential subcontractors, seeking bids for the manufacture of 124 ballast cans. In February 1989, Lockheed received eight bids, including one from Sulzer Bingham. Sulzer Bingham was the lowest bidder at $6,544,055. The next lowest bid was $10,176,670, and the bids ranged up to $12,940,540, with one high bid at $17,766,327. Lockheed estimated that the job would cost about $8.5 million.

Lockheed's employees were shocked by Sulzer Bingham's bid and thought it was surprisingly low. Price extensions, submitted to Lockheed by Sulzer Bingham, revealed no arithmetic errors. Lockheed then asked Sulzer Bingham to verify that its bid included shipping charges and First Article Compatibility Testing, but did not ask for verification of the entire bid. Sulzer Bingham informed Lockheed that its bid was complete. Lockheed then inspected Sulzer Bingham's Portland facility to evaluate Sulzer Bingham's technical capabilities. The inspection revealed that Sulzer Bingham would have to make many modifications to its existing facility in order to complete the contract. The turntable Sulzer Bingham anticipated using for machining and assembling the ballast cans was inadequate, and an entirely new lead pouring facility needed to be constructed. None of these shortcomings were revealed to Sulzer Bingham by Lockheed.

At no time did Lockheed notify Sulzer Bingham that it suspected a mistake in Sulzer Bingham's bid. Lockheed did not inform Sulzer Bingham that its bid was significantly lower than the next lowest bid, and lower than Lockheed's own estimate of the cost of the job as well. Lockheed never informed Sulzer Bingham that it suspected that Sulzer Bingham would not be able to complete the contract at the bid price.

Sulzer Bingham made a variety of errors in its bid. It had underestimated the number of hours the job would require, and had used hourly labor rates that were below cost. Sulzer Bingham had not realized that its existing facilities were inadequate for the job, and had overlooked certain costs of the job. Sulzer Bingham's bid broke down to $30,707 per ballast can. The next lowest bid broke down to $58,137 per can, and Lockheed estimated at least $40,000 per can.

In late February 1989, Lockheed accepted Sulzer Bingham's bid and Sulzer Bingham started work. In November 1989, Sulzer Bingham revised its estimate of the cost of the job and asked Lockheed for an additional $2,111,000 in compensation. Lockheed rejected Sulzer Bingham's request for additional compensation.

## PROCEEDINGS BELOW

On April 11, 1990, Sulzer Bingham commenced this action against Lockheed in the Multnomah County, Oregon, Circuit Court. Sulzer Bingham sought to reform the contract by increasing the price from $6,534,055 to $8,645,000. In the alternative Sulzer Bingham sought to rescind its bid.

On April 20, 1990, Lockheed removed the action to the United States District Court for the District of Oregon on the basis of diversity jurisdiction. A bench trial was conducted on December 11 and 12, 1990. On January 22, 1991, the district court issued its opinion ordering judgment for plaintiff.

The district court concluded that United States government contract law governed the contract, and that the Federal Acquisition Regulation, Title 48 of the Code of Federal Regulations, governed the action. The district court also concluded that under

section 14.406–3 of the Federal Acquisition Regulation, Lockheed had a duty to notify Sulzer Bingham when it suspected a mistake in Sulzer Bingham's bid. The district court further concluded that Lockheed breached this duty, and Sulzer Bingham was therefore entitled to equitable relief.

The district court denied rescission because Sulzer Bingham had delayed its request for rescission and because Sulzer Bingham had already completed about half of the contract. The district court then concluded that it could award Sulzer Bingham other equitable relief because Lockheed had breached its duty to verify Sulzer Bingham's bid, and the resulting contract was unconscionable. The district court required Sulzer Bingham to complete the contract, and ordered that Sulzer Bingham could "recover its actual costs only, including a reasonable amount for depreciation and overhead. Under no circumstances may [Sulzer Bingham's] recovery exceed the amount of the next lowest bid."

## THE APPLICABILITY OF FEDERAL ACQUISITION REGULATIONS REGARDING BID VERIFICATION

Lockheed argues that the district court erred in holding that the Federal Acquisition Regulations ("FAR") imposed specific verification duties on Lockheed. Principally, Lockheed argues that the verification duties set forth in FAR do not apply to Lockheed because the provisions were not expressly incorporated into the subcontract.

Clause I–79 of the Lockheed–Sulzer Bingham subcontract states:

This subcontract shall be governed by and construed in accordance with the law of U.S. Government contracts as set forth by statute and applicable regulations, and decisions by the appropriate courts and Board of Contract Appeals. To the extent that the law referred to in the foregoing sentence is not determinative of an issue arising out of the clauses of this subcontract recourse shall be to the law of the State of California.

The district court, basing its decision on the language of the subcontract, concluded that the Federal Acquisition Regulation governed this action.

Section 14.406–3 of the Federal Acquisition Regulation requires a contracting officer to take the following steps if a bidding mistake is suspected:

(1) The contracting officer shall immediately request the bidder to verify the bid. Action taken to verify bids must be sufficient to reasonably assure the contracting officer that the bid as confirmed is without error, or to elicit the allegation of a mistake by the bidder. To assure that the bidder will be put on notice of a mistake suspected by the contracting officer, the bidder should be advised as appropriate—

(i) That its bid is so much lower than the other bids or the Government's estimate as to indicate a possibility of error;

\* \* \* \* \* \*

\* \* \* \* \* \*

(iv) Of any other information, proper for disclosure, that leads the contracting officer to believe that there is a mistake in bid.

48 C.F.R. § 14.406–3(g)(1). The district court held that Lockheed breached its duty to Sulzer Bingham by not notifying Sulzer Bingham that it suspected a mistake, and not informing Sulzer Bingham that the bid was much lower than all other bids.

Lockheed argues that this FAR provision dictates how the government must respond when a mistaken bid is suspected, and that it is inapplicable to a subcontract. Central to this argument is Lockheed's contention that Lockheed assumed the role of "Contracting Officer" only where specific FAR provisions were expressly incorporated into the subcontract. Lockheed asserts that if Section I–79 made FAR generally applicable to the entire subcontract, then the individual FAR provisions, incorporated by reference, would be rendered nonsensical.

■ Lockheed's position, that it is subject only to expressly incorporated sections of FAR, is irreconcilable with the subcontract's choice of law provision requiring that the contract be governed by "the law

of U.S. Government contracts as set forth by statute and applicable regulations...." After selecting federal government contract law to govern the contract, Lockheed may not avoid duties imposed by that body of law by arguing that it intended to incorporate only discrete portions of the law. Moreover, Lockheed's request for quotations on the ballast can project included the following statement:

> In conducting the price competition and resultant award, the standards established by the Federal Acquisition Regulation must be adhered to.

Furthermore, a prebid memorandum to all bidders stated: "PER DIRECTION FROM THE DEPARTMENT OF THE NAVY, THE PRICE COMPETITION AND RESULTANT AWARD WILL BE PER THE STANDARDS ESTABLISHED BY THE FEDERAL ACQUISITION REGULATION."

■ Nor can Lockheed avoid duties owed under FAR by arguing that the bid verification requirements apply only to the government as the "Contracting Officer." Under FAR, the term contracting officer "includes certain authorized representatives of the contracting officer acting within the limits of their authority as delegated by the contracting officer." 48 C.F.R. 2.101. This definition appears verbatim in section 1-1(a)(4) of the subcontract. The subcontract clearly anticipated that Lockheed, as the Navy's representative, would assume the role of "Contracting Officer." The district court correctly concluded that FAR governed the parties' conduct during the bid acceptance and award period, and that Lockheed breached its duty under FAR by failing to notify Sulzer Bingham that it suspected a mistake in the bid.

### THE APPROPRIATE REMEDY FOR LOCKHEED'S BREACH

Lockheed argues that even if FAR applies and Lockheed breached its duty to properly verify Sulzer Bingham's bid, nevertheless Sulzer Bingham is not entitled to relief. In support of this argument Lockheed relies on cases holding that the terms of a substantially performed contract may not be changed through reformation if the bid mistake is not attributable to an arithmetic or clerical error.

■ It is apparently well settled government contract law that reformation, based upon a mistake in bidding, is available to correct only "clear cut clerical or arithmetical error, or misreading of specifications." *Aydin Corp. v. United States*, 229 Ct.Cl. 309, 314, 669 F.2d 681, 685 (1982) (quoting *Ruggiero v. United States*, 190 Ct.Cl. 327, 335, 420 F.2d 709, 713 (1970)). According to the district court's findings, errors in judgment predominated in this case. It is apparently well settled government contract law that such errors in judgment do not, by themselves, justify the award of equitable relief in the form of a change in the contract price. *See Liebherr Crane Corp. v. United States*, 810 F.2d 1153, 1158 (Fed.Cir.1987); *United States v. Hamilton Enterprises, Inc.*, 711 F.2d 1038, 1046 (Fed. Cir.1983). Such a conclusion is consistent with the understanding that contracting entities should live up to their contractual obligations when bidding errors are based on economic misjudgment, and not attributable to the other contracting party's conduct.

■ In this case, however, the district court did not fashion equitable relief solely on the basis of the bidder's economic misjudgments. Rather, the district court awarded relief because Lockheed, in failing to follow contractual provisions requiring bid verification, accepted an unconscionably low bid. The verification procedures Lockheed ignored were designed to ensure that such unconscionably priced contracts would not be awarded.

None of the authorities relied upon by Lockheed involve such a situation. In *Aydin Corp.*, 229 Ct.Cl. at 318, 669 F.2d at 687, for example, the disparity in bids was not sufficient to put the contracting officer on constructive notice of any mistake in the bid, whereas in this case, Lockheed had actual notice. In *Hamilton Enterprises*, 711 F.2d at 1045, the bidder underestimated the number of hours needed to perform the contract, and the government failed to

adequately verify the bid. The bidder defaulted on the contract. The court denied the claims of both parties, describing the case as one of "mutual fault to the extent that neither party is entitled to recover on the claims asserted against the other." There was no finding of unconscionability. In this case, unlike *Hamilton Enterprises,* Lockheed is reaping the rewards of Sulzer Bingham's performance at an unconscionably low price. The Defense Department's own adjudicatory arm has itself recognized in contract disputes that equitable principles do apply to prevent the enforcement of an unconscionable contract. *See Manistique Tool and Mfg. Co.,* 84–3 B.C.A. 17,-599 at 87,678, 1984 WL 13655 (Aug. 13, 1984); *see also United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 175 (9th Cir.1987) ("The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."); *Union Pacific Railway Co. v. Chicago R.I. & P. Railway,* 163 U.S. 564, 603–04, 16 S.Ct. 1173, 1188–89, 41 L.Ed. 265 (1896) ("Doubtless a court of equity may refuse to decree the specific performance of a contract, if it be unconscionable").

AFFIRMED.